All right, we'll turn to the next case on the oral argument panel, which is the Macomb County Employees Retirement System v. Align Technologies. You may proceed. Thank you, Your Honors, and may it please the Court, my name is Javier Blakmar on behalf of the Plaintiff Appellant. I'd like to reserve three minutes for rebuttal, please. All right. This securities class action is about defendants' false statements about the rate of growth in China. It's not whether it was growing or not, but about the rate at which it was growing. The statements by the defendants during the class period were misleading because the statements gave the false impression, which is the standard under quality systems and under intuitive, that growth in China was 70% when it was not. Growth in China was 20 to 30%. One of the central legal issues, if not the central legal issue in this case, is materiality. Were the statements material? And did they constitute puffery? The statements are puffery under intuitive and under quality systems and well-established non-circuit law. If they're statements that investors would have devalued, taken with a grain of salt, or not taken seriously. On the opposite side, they're not puffery if they're statements that investors would have considered in the total mix of information when making their investment decision, as the definition of materialities requires under matrix in the Supreme Court decision. Is that rule that you just said for all investors? That is, a person that has absolutely no understanding of what they're doing. They're just putting money on the shelf. You said all investors. As we talk about all investors, that would include them. Isn't there something more restrictive that we're supposed to look as the type of investor that we consider? I don't believe that's the case, Your Honor. I believe the standard for materiality is an objective one. Turning to the precise statements, the question is, are they puffery or are they outright falsehoods? What's your best statement that you point to establish that? Let me point to the statement where defendant Moriichi, the CFO, says, well, we see tremendous growth in Asia Pacific, in China in particular. We addressed that in our opening brief at page 14 to 15. Let me say that the standard for puffer requires a contextual analysis. The context here of tremendous growth in China in the second quarter of 2019, here the class period is one quarter. The second quarter is April through June of 2019. The context is the past three months, the investment analysts had said, we asked plenty of questions of the defendants about the growth in China, had specifically said, we believe growth in had said specifically, China is our fastest growing country market with approximately 70% annual growth rate. The backdrop to this conversation on May 29th of 2019, two months into the class period, and after April is in the books and May is in the books in terms of sales, and the defendants have just-in-time information, is that growth had been 70% in the past, and not just in the prior quarter. Growth had been at least 70% for the prior nine quarters. Between 2017 and the first quarter of 2019, which is the quarter right before the class period, growth had gone from 70% to 80% to 100% back to 70% and stayed at 70%. And before that, growth in China had always been more than 80%. So the context is growth in China had, in a sense, always been, and by always, I'm being a little bit, I don't mean to say eternity, but in the last eight years or six years, growth had been over 70%. That is the context. And the question was- I just want to ask you, we understand that, but then as I go through each of these statements, and I think about, you know, statements have to be objectively verifiable. And the kind of statements that are made here are the typical, well, we see China as a good growth region. Let's see, we see a great business overall from standpoint. Those are not precise statements that are objectively verifiable in the broad sense that China is still a major market, and they see growth. So I don't see these as objectively verifiable as opposed to what the district court categorized as puffery. So why do you think that these particular statements are objectively verifiable? Well, going back to the tremendous growth statement, growth is a number. And the context was that growth had always been 70%. And the said to the defendants, he had spoken at investor conferences, and we thought everything was positive and everything was the same. So they were interpreting growth to be 70%. It is very different than- But that, you see, that's the whole point, is that the fact that your growth rate may be different from what it was in the past doesn't necessarily undercut the fact that you still think you're going to see growth in the market or that China represents a growth-based market. And so when I look at these statements, they're not saying what you would like them to say in terms of verifiable data. You're saying, well, you have to like take what happened in the past, see what happened here, see where they are, and then you benchmark those statements against that. But if the To me, they look like the kind of puffery that we would normally see. Let me try to point to a specific statement along the lines that your Honor is addressing. But look at the question. And I wanted to look at the statement that is in the record, page 97, in our opposition briefing at 15. So what's- Just so I can try to locate it. Yeah, so the statement said- Who's the speaker and what's the date? The speaker is Morichi. Okay. And this is a study from the Dental and Veterinary Conference. I'm sorry? That's the Dental and Veterinary Conference. Correct. This is May 29? Let me double check whether that's May 29th, Your Honor. I think that's where he makes most of these statements. Yeah, that is where he makes most of the statements. Well, the statement about- Yes, so that's May 29th, Your Honor. And so it's the third statement on May 29th. And the question is, you still see China being fastest growth, right? So the question is saying, one is, you still, meaning, are you comparing to the prior quarter, is China still fastest growth? And fastest is the same phraseology that defendant Tai had used in March, where she said that China is the fastest growing market at 70%. So the analyst is asking, and that has been the fundamental question that the analyst kept asking throughout the class period, is China still growing as it was growing before? And March, after having said in that same conference on May 29th, that growth had been tremendous, right? So after, he says twice that growth is tremendous. His response is a long-winded response about all the positive things in China. And you could argue under Brody that those statements are literally true, but they create the false impression that growth was still fastest growth. See, that's what's missing here, is that the link between the rate of growth before, as opposed to still growing, but maybe not in the same rate. And so I guess you're asking us to infer that behind these statements is another statement that would say, but not as fast as it was. Well, let me point, Your Honor, to another statement. Can you just answer that? I'm just trying to put these in context. I don't think so, Your Honor. I think many of the statements, the question and the answer specifically are about the prior quarters and this quarter, and the quarter in the class period where it's false. When the analyst says still fastest growth, the question is, is the growth the same as before? That's in the question and answer. That's not a question of prior context. That is what the analyst is asking. And let me point to another statement. And this is on May 14th. The record is 95, paragraph 97. The analyst says, obviously, competition is a major question with this story. And then he continues, it's been about a year since some of these competitors launched their And he's asking an update of the various competitors. And after a long response, Morici says, we've been competing against many of these companies that I mentioned for a number of years and still being able to grow as we have. Still being able to grow as we have is saying we're growing now still as we have in the past. And that's what brings this case well within quality systems. Quality systems did make that point that there was a comparison in quality systems about the statements before the class period and during the class period. Now, keep in mind, quality systems was a four quarter or as a multiple quarter class period. This case is a one quarter class period. So in effect, by definition, the growth that the analysts are asking about is has to be compared to the prior growth, and the prior growth is nine quarters. Now, what even adds more to that, Your Honor, is that at the end of the class period, the stock drops from 275 to $200 over 27% in the largest drop in a decade, because China had growth had slowed. And the analysts specifically say, you had been at a number of conferences. In fact, they were at four conferences between the middle of May and the middle of June, saying everything is okay. That was the effect of what the analysts understood their statements to mean. And at the end, the analyst said, wait, things were not okay. So the import was China's growing at 70%. And the analysts are saying, that's how we interpret it. That's what you told us in sum and substance. And it wasn't. So isn't there a difference? Because in the quality systems, in fact, they definitely were declining. And the statements are made is that we haven't seen any fundamental change. Now, that's probably false. It doesn't even, you know, border on puffery. So I have trouble fitting these kind of statements into the quality systems statements. Your Honor, I was going to restart time for rebuttal. But let me answer your question quickly. I think quality systems, excuse me, intuitive. Well, in quality systems, the sales were dropping. But in intuitive, also sales were dropping, but there was truth on the market. And I do want to be able to explain to Your Honor how Your Honor's opinion in intuitive distinguishable. And one of the ways is distinguishable is because in this instance, in our case, in a line, there was no understanding whatsoever that sales in China were dropping. Sales in China had been 70% or above. And until the end of the class period, there was no understanding by the market at all. And if with that, Your Honor, I would like to reserve the remainder of my time for rebuttal. Thank you, counsel. We'll hear from Align Technologies. Technology. Good morning, Your Honors. I'm Shai Goretsky with Skadden Arps on behalf of Align and the individual defendants. The PSLRA sets a stringent plating standard for securities fraud. The plaintiff has to identify each challenge statement and plead with particularity, which this court has said means in great detail why it's false or misleading. The statements here fall into two categories, neither of which is actionable. Most of the statements using words like great, or in the example that Mr. Blackmore gave, tremendous, those are inactionable puffery. And no purported context or investor reaction to those statements can transform that kind of vague, optimistic language into factual statements that are capable of objective verification. If these are the sorts of statements that are securities fraud, no corporate investor would ever use any adjective, or no corporate representative, excuse me, would ever use any adjective in speaking with investors. The second category consists of statements that are amenable to being proven true or false. But if you parse those statements, they did not affirmatively create a misleading impression, either explicitly or by omission. Mr. Blackmore focused in his argument on three statements, and I'm happy to address each of them in turn. The first statement was, we see tremendous growth. Tremendous growth is a classic puffery sort of statement. Whether something is tremendous or not, that's not capable of objective verification. Now, if there were a situation where there had been no growth at all, that might then look like the Tesla case. But there's no allegation here that there was no growth. Mr. Blackmore's allegation is that the growth was not tremendous enough. But tremendous simply doesn't have a fixed meaning. It's similar to the statements in Intuitive and in Kutera that this court found were not actionable as a matter of law. It's like saying an opportunity is very large, or that the company's in a pretty good position. That is, as Intuitive put it, the antithesis of facts. Or in Kutera, that employer relations are good, or products are doing very well. Tremendous growth is classic puffery that's not actionable. Now, if we look at the other two statements, those aren't puffery, but they simply fail the pleading standards for falsity in this case. So if we look at the grow as we have statement, that is a backwards-looking statement. What Mr. Morici was saying there is that in response to a question about competition, he's saying we've been competing against many of these companies that I mentioned for a number of years and still been able to grow as we have. So it's talking about past growth in light of competition for a number of years. It's not making any sort of a guarantee of future growth or that growth was going to continue at a 70% rate. And then the last statement that Mr. Blackmore pointed to consists of a series of points by Mr. Morici about the dynamics in China. The dynamics in China are really good for us. They start with a higher list price. They have very complicated cases, comprehensive cases. McComb pleads no facts contradicting any of what Mr. Morici said about the dynamics in China. Now, what McComb tries to do is to import the notion of 70% growth into the question, even though the analysts didn't say that, and then pretend as though Mr. Morici gave an answer that affirmed that unspoken 70% figure. But neither the question nor the answer said anything about 70%. The reference that Mr. Blackmore made to the statement by Julie Tay using the word fastest growing, that was in an article in Chinadaily.com nearly two months earlier. There's no allegation here that the analyst who asked the question was aware of that particular article, or that Mr. Morici was aware of that particular article. So just because one person uses the word fastest growing to refer to China's 70% growth rate in one context doesn't mean that fastest growing is then forevermore code for 70%. Well, I take your point, but I think if you look at the actual data and the comments, there wasn't tremendous growth in China. Would you agree with that? Well, I don't think tremendous growth is really something that is capable of a fixed meaning, but even where this quarter ended up, there was 20 to 30% growth in China. That's a very good point. But at the same time, I think the key point is we can have a debate about what's tremendous or what's not. And that's exactly the point, is that tremendous doesn't have a fixed meaning. And for that reason, it's not a factual statement. It can't be proven true or false, which is what the security law requires. When you benchmark that statement against the fact that you did have tremendous growth of a certain rate before, you have growth now, but it's not in the same galloping percentages that went on before. So you can always say we have growth, okay? We sold one more of these products. But doesn't this imply that the growth now is like the path that the company has been on or even greater? No, it doesn't, because that's not what the defendant said. I think the key point in your benchmark, growth within the class period against prior growth, well, if the company had done that, if the company had said, we expect to continue growing at 70%, that might be different. And in that situation, that then might look more like the statements in quality systems. The reason those were actionable was that the company had expressly said there, we see nothing out of cycle has not lengthened. We haven't seen any fundamental change to any of the dynamics that have been feeding into our system for the last two or three years. The reason that the statements in quality systems were actionable was that the company did the benchmarking. But here, there is no benchmarking in the statements that McComb challenges, that these are either puffery when we're talking about words like greater tremendous growth, or there are statements that are simply have not been alleged with sufficient particularity to be false about dynamics in China. But if the answer had been, actually, we've seen a 50 to 70% decrease in growth, I think the analysts would have taken that somewhat differently. Because if you're talking about 70% growth versus 20% growth, that's a 70 or credit 30%. That's 50 to 70% decrease in growth. But I think the point is that the answer that was given didn't say anything one way or another about growth. It didn't say it was going to continue to be 70. It didn't say it was going to go down to 50 to 60. It didn't say that it was going to go down to 20. It simply made factual statements about the dynamics in China. And if McComb wishes to challenge the truth of those statements, it has to do so with particularized allegations that it hasn't made. But what it can't do is import into the answer a statement that simply wasn't made. And moreover, if you look at the previous reports on earnings that Align had made, Align never provided intra-quarter, country by country guidance on how things were going. And there's no basis to think that that's what it did here or that it would have been a was doing when it either used puffery like great or tremendous, or simply made factual assertions that haven't been alleged to be false about the dynamics of the China market. And so again, the statements here fit into two categories. The bulk of them, I think seven or eight of the challenge statements are puffery using words like great and tremendous, and that's just not objectively verifiable. Those are the sorts of statements that the court has routinely granted motions to dismiss on or affirm dismissals. And then with respect to the particular statements that are alleged to be, that are not puffery, but that are alleged to be false, there's no allegation with sufficient particularity that connects the dots as to falsity in the way that a plaintiff is required to do under the PSLRA. What about the statement that's a little more specific that it's a market that's growing significantly for us? How can that not be false in the face of what was actually happening in the market? Well, so two points. One, significantly is also not a word with a fixed meaning. Again, it might be a different situation if the company expressly benchmarked what was going on in the quarter to what had gone on before. And I'll use one of the cases that McComb relies on as a scholastic case out of the second circuit. In that case, there was a statement about a normal rate of return. Well, normal isn't puffery. Normal necessarily calls for a benchmark about what is the norm. But if we're just talking about significantly, that's not a word with a fixed meaning. Let me ask you if the statement had not used the word significantly, but just said China is a market that's growing for us. Would that be true? Well, first of all, it certainly turned out to be true. No, not this is in June 2019. And if we just take out that word significantly. So it would be true that the company ultimately had 20 to 30 percent growth in that quarter in 30 percent in that quarter in China. And so this starts to look like Tesla, where if you're talking about great progress, that would only be actionable if there were no progress at all. Likewise, if we're talking about significant growth or tremendous growth, that kind of a statement might only be actionable if there were no growth at all, which, first of all, here there was. And second of all, the point it hasn't alleged with particularity as they're required to do, why there's a reason to think that the statement about significant growth wasn't true when it was made. And so, again, most of the statements here are puffery. The ones that are not puffery simply haven't been there's not been allegations with sufficient particularity about why they are false. Lastly, with respect to the intuitive case, which Mr. Blakemar began to distinguish. First of all, the statement of the rule and intuitive was that certain kinds of language very, very large opportunity, pretty good position. Those are puffery because by their very nature, they are the antithesis of facts that that rule didn't depend on what the market did or did not know. Now, when the intuitive case then considered the argument that the point of there made about context, it looked at what investors, investors knew or didn't know. But here, too, investors knew that growth in China was slowing. It had been slowing significantly before this quarter. And so there was no surprise that growth was declining. And in light of that, there was also no basis to think that when the company representatives made statements using adjectives and adverbs, great significantly within the class period, that that was somehow guaranteeing that growth was not declining, contrary to what had been going on heading into that quarter. And the other point that intuitive is significant for is that intuitive establishes that where you're dealing with statements that are puffery, no amount of analyst reaction to that or reliance on that can make those statements actionable. Those statements are as a matter of law, not actionable. And that has to be the rule, because if that weren't the case, you'd be opening the floodgates to securities litigation every time corporate representatives speak to investors using any sort of adjective or adverb about how things are going. Thank you, counsel. We'll hear rebuttal. Yes, Your Honor, let me address that last point about intuitive and the market reaction after corrective disclosure does matter. In the decision in Alphabet just issued last June, in which Your Honor, Judge Thomas was a member of the panel, and that's 1-F-4-6-8-7, the quote ascribed value to the market reaction. The court said, quote, the market reaction increased regulatory and governmental scrutiny, both in the United States and abroad, and media coverage alleged by the complaint to have occurred after disclosure all support the materiality of the misleading omission, end quote. What I suggest to you, Your Honor, is that intuitive is not categorical. The market reaction never matters. In intuitive, the only categorical aspect is that there were two elements of the claim. If materiality is not satisfied or falsity, then reliance does not come into play. In fact, in retail wholesale, that's how retail wholesale interpreted that point of intuitive. Because if there's one thing we know about materiality is that there is no categorical analysis of materiality. Materiality is always about context. So in intuitive, while the context of truth in the market, in that context, it may be that the market reaction didn't matter because the market already knew that the sales were decelerating. That is limited to the facts of intuitive. In the facts here, the market reaction did matter as we allege. The last point I'd like to make, Your Honor, is that the standard here is reasonable inference. The plaintiffs just need to raise a reasonable inference that the defendant's statements created a false impression. Whether the defendants can posit an alternative inference is of no moment. It could be that the started very well and then slowed down. But that is something to be decided by, determined by the jury. It is not to be determined on a motion to dismiss. And with that, I'm over my time. Thank you, Your Honor. Thank you, counsel. Thank you both for your arguments this morning. The case just heard will be submitted for decision, and we'll proceed to the next case on the oral argument calendar.
judges: WALLACE, THOMAS, McKEOWN